Pleas: (1) That the defendant's testator did not assume, and (2) that he did not assume within three years.
The cause was tried before Norwood, J., at NASH, on the last circuit.
Upon the issue on the first plea, the plaintiff offered a witness who had been of counsel for him on a former trial in the county court, to prove what a witness, since dead, had there deposed; the counsel stated that he had examined the witness; that he paid particular attention to his evidence, and had taken notes of it, which were then produced; that he did not pretend to have taken down the exact words of the witness, but that he believed that he was able to give the jury the whole of the testimony of the witness on the former trial, though not in the very words then used by him. Upon this statement, his Honor admitted the evidence of the testimony of the deceased witness, and that testimony was material for the plaintiff. The defendant's counsel then (461) proposed to prove that the deceased witness had deposed to other facts besides those in evidence, but his Honor refused to stop the plaintiff's case to receive the proposed testimony, observing that the competency of the plaintiff's witness could not be tested by the opposing recollection of another witness, but depended on the statement upon *Page 375 
which it had been received; that the defendant would be at liberty, when called on for his evidence, to offer to the jury such proof on that point as he might think proper. Afterwards the defendant proved other facts deposed to by the deceased witness on his cross-examination, which had not been stated by the plaintiff's witness, which were material to the defendant, and then requested his Honor to direct the jury to disregard all the evidence of the deceased witness, which the judge refused to do.
All the transactions between the plaintiff and the defendant's testator having happened more than three years before the commencement of the action, the plaintiff, to repel the plea of the statute of limitations, introduced a Mr. McLeod, who deposed that he was sent for by the defendant's testator a few months before his death, but within three years of the issuing of the writ, and requested to draft his, the testator's, will; that all his property was left to the defendant, his wife; that during the time the witness was writing the will, the testator requested the defendant to do something for his sister; that the defendant answered he had better leave her a legacy, to which he replied he was not able to do so, as he feared, when his affairs were settled and his debts paid, there would be but little left, too little to allow him to make a separate provision for his sister. The testator requested Mr. McLeod to be his executor, which was declined, but Mr. McLeod promised to render any assistance in his power to the defendant, who was appointed. The testator then entered into conversation as to his business, stated that he never had settled with the plaintiff, and seemed much distressed at the thought of not doing so. At his request, Mr. McLeod made a memorandum of sundry credits to which he was entitled, in a settlement with the plaintiff, several of which were similar to the following: "I paid Mr. Ballenger (462) 142 dolls. at February court, 1822, I think, for which I have no receipt, and this payment was made him towards a settlement for tax money."
Another witness deposed to a conversation between the plaintiff and the defendant's testator, during his last illness, within three years of issuing of the writ, in which the former said there never had been a settlement between them, which was admitted by the latter, who said he wished they could come to a settlement.
A witness introduced by the defendant deposed that a few days after the will was drawn by Mr. McLeod, he was sent by the defendant's testator to the plaintiff to request the latter to come and see him, that they might arrange their business and have a settlement, to which the plaintiff returned no answer. That afterwards, in consequence of a similar request, he again went to see the plaintiff during the sitting of the county court, and was informed by the plaintiff that he could not then go, as he was attending upon the court; that the witness asked him *Page 376 
to come directly after court, to which the plaintiff made no reply. It did not appear that the plaintiff had any other claim against the defendant's testator, except that for which this action was brought.
His Honor informed the jury that when a man admitted the existence of an unsettled account, and declared a willingness to settle it, a promise to pay what should be ascertained to be due was implied, and the defense of limitations would be thereby waived. For to what purpose, it might be asked, was a settlement to be made, unless the balance, when ascertained, was to be paid? And therefore he instructed the jury that if they were satisfied from the evidence that the defendant's testator did admit the existence of an unsettled account between him and the plaintiff, and declare his willingness to come to a settlement with the plaintiff, they would be warranted in finding against the defendant upon the plea of the statute. No modification of these instructions was asked, nor was any exception thereto taken, the counsel for the defendant only (463) insisting that there was no evidence to rebut the plea of the statute. A verdict was returned for the plaintiff, and a motion for a new trial being overruled, judgment was entered accordingly. the cause having been tried in the county court, and the defendant having failed to reduce the amount recovered in that court, his Honor gave judgment for the additional four per cent imposed by the Act of 1807 (Rev., ch. 713). The defendant appealed.
This is a most perplexing question. It is clear from the frequent acknowledgments made by the testator, not long before his death, that there were many unsettled accounts between him and the plaintiff, and that he desired to settle them in his life time. The credits which he directed McLeod to write down plainly point to the nature of those accounts, and show that they were for the tax money received by him as the collector and deputy of the plaintiff. But the amount due, if anything, does not appear from his admissions otherwise than it can be collected from an observation made to his wife, that he was largely indebted, but to whom he did not even allude, further than can be inferred from the accounts between him and the plaintiff, being the principal subject of their conversation. It is very unlike an acknowledgment made by a person by agreeing to enter into a settlement, or that another should settle for him. In a case of that kind why settle, unless the balance due was to be paid? An admission of that kind would be a waiver of the statute, for the defendant says. "I can and agree to stand upon my rights. I can do myself justice in the settlement." In this *Page 377 
case there was a great anxiety on the part of the testator to (465) settle himself in his lifetime that he might do himself justice, and a regret expressed that it could not be done upon the plaintiff's last visit. His sending twice for the plaintiff, just before his death, evinced his great desire that the settlement should take place in his lifetime and under his inspection. This was the settlement he was anxious and willing to have made — not one after his death, to which his estate is now called, and which the argument must affirm, to derive anything from his admissions, to be the one he was willing to have made. The statute was passed to avoid litigation upon doubtful claims, and therefore when the doubt is done away by the admission of the party, or the benefit waived by him, it was thought to be in accordance with the spirit of the act to declare it formed no bar to a suit. But here we are left entirely in the dark; the statute has not been waived by an agreement of the defendant's testator to settle, except in his lifetime; and the proof is rather of an anxiety to settle than a formal agreement that the accounts might be settled at another time, or otherwise than by himself in prospect of death. All the mischiefs of the statute will be let in, as the admission does not aid in settling the amount due, nor can we be satisfied that these are the accounts referred to — there may be others — and the credits entered by McLeod might not be all his payments, but only those for which he had no receipt, and his having them put down does not prove that he was willing that a settlement should take place after his death, but a wish to prepare for the worst. Upon the whole I am inclined to think from policy, as well as justice, a new trial should be awarded. There cannot be a nonsuit, as that is entered where the plaintiff does not support his action by proof, not where the defendant supports his plea.
There is nothing in the objection that the witness who was examined by the plaintiff, as to the testimony of one who had been sworn on a former trial, did not profess to give the very words of the deceased witness, but the substance only. No man can give the words where the testimony exceeds a single sentence. The witness himself, (466) if desired, after closing his testimony to commence and go through with it again, could only give the substance in many parts. The difficulty has arisen from the English reporters confounding substance with effect; the latter usually will not do; it must be the words or the substance. If the witness professed to be able to give the whole, it was proper to hear him, and when it appeared afterwards that he was mistaken and omitted some material parts, according to the testimony of another witness, the court could not decide between them, and if it could, and the addition placed the whole of what the dead witness said before the jury, they would then receive it as evidence. They must *Page 378 
be satisfied that they have the whole of what the witness deposed to before them; they must have all or none, as the whole is to be explained by the whole and by every part. I do not know in such a case how the court could do otherwise.
I feel better satisfied in sending this case to a second jury, as the verdict is large, upon a very stale demand and against the estate of a dead man, although I am not entirely satisfied on the point of the statute of limitations. But there was no acknowledgment of a debt, or balance due, or an agreement to settle then or at any other time, but a great anxiety to have a settlement in his lifetime. It evinced great unwillingness for what is the object of this suit, viz., a settlement after his death, and that by an action.
RUFFIN, J., concurred.